IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Anthony Jesus Johnson, ) | Case No. 8:12-cv-01536-GRA-JDA |
| )  Petitioner, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Warden Leroy Cartledge, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 28.] Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on June 7, 2012.[1] [Doc. 1.] On October 31, 2012, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 28, 29.] On November 1, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 30.] Petitioner filed a motion for extension of time to respond to the motion for summary judgment [Doc. 32], and on November 27, 2012, the Court granted Petitioner's motion, extending the response deadline to January 9, 2013 [Doc. 33]. Also

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on June 7, 2012. [Doc. 1-3 (envelope marked as received by prison mailroom on June 7, 2012).]

on November 27, 2012, Respondent filed an amended return and memorandum in support of his motion for summary judgment. [Doc. 36.] Accordingly, the Court issued a second *Roseboro* Order and set Petitioner's response deadline to January 9, 2013, based on the Court's Order granting Petitioner additional time to respond. [Doc. 37.] After receiving another extension of time [Doc. 40], Petitioner filed a response in opposition to Respondent's motion for summary judgment on February 15, 2013 [Doc. 42]. Subsequently, Respondent filed a reply [Doc. 46] and Petitioner filed a sur-reply [Doc. 48]. Accordingly, Respondent's motion is now ripe for review.

## BACKGROUND

Petitioner is presently confined at the McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Greenville County Clerk of Court. [Doc. 1 at 1.] In May 2004, Petitioner was indicted for murder and assault and battery with intent to kill ("ABWIK"). [App. 351–54.[2]] On November 8, 2004, represented by E.P. Godfrey ("Godfrey") and Clarissa Warren Joyner ("Joyner"), Petitioner proceeded to trial. [App. 1–233.] On November 9, 2004, the jury returned a verdict of guilty for each charge. [App. 227.] Petitioner was sentenced to life imprisonment for the murder charge and ten years for the ABWIK charge, to run consecutive to the life sentence. [App. 232.]

**State Court Review**

Petitioner pursued a direct appeal of his convictions and sentences, which was dismissed by the South Carolina Court of Appeals on January 11, 2008. [Doc. 29-4.]

---

[2]The Appendix can be found at Docket Entry Numbers 29-1 through 29-3.

2

Petitioner then sought collateral review, filing three applications for post-conviction relief ("PCR"). [App. 245–59; Doc. 29-13; Doc. 29-25.] Petitioner's first PCR application was denied and dismissed with prejudice on April 6, 2010 [App. 330–41], after a hearing was held on the application [App. 266–329]. The PCR court denied a subsequent motion to alter or amend the judgment. [App. 342–45, 349–50.] Counsel filed a petition for writ of certiorari in the South Carolina Supreme Court, seeking review of the PCR court's decision. [Doc. 29-6.] While the petition for writ of certiorari was pending, Petitioner filed several pro se motions [Doc. 29-7], which the South Carolina Supreme Court denied because Petitioner was represented by counsel [Docs. 29-7, 29-8; *see also* Doc. 29-11 (denying motion for reconsideration)]. On December 15, 2011, the South Carolina Supreme Court denied the petition for writ of certiorari from the denial of Petitioner's first PCR application. [Doc. 29-10.] Petitioner's second and third PCR applications were denied as untimely and successive. [Docs. 29-18, 29-23, 29-30, 29-35.]

**Petition for Writ of Habeas Corpus**

As stated, Petitioner filed this Petition for writ of habeas corpus on June 7, 2012 pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner asserts the following grounds for relief, quoted substantially verbatim:

> **Ground One**:      Ineffective Assistance of trial counsel.
>
> *Supporting Facts:*   Petitioner argues that the State Courts denial of his claim(s) of ineffective assistance of counsel was contrary to Federal law(s). Where Petitioner further argue that both the P.C.R. court as well as the Supreme Court improperly applied the Strickland reasonable probability of the PREJUDICE standard, objectively unreasonable.

3

Here the courts identified the correct legal rule. But unreasonably applied them to the FACTS of Petitioner's case.

Where co-counsel Joyner was ineffective in introducing into evidence a photograph during her cross-examination of Alisa Montgomery because it deprived petitioner of the last closing argument. . . .

The police had little to go on. Both Tyrone Thompson and Alisa Montgomery had said petitioner <u>was not</u> involved.

It was "not" <u>until</u> several years later, (5 ½ yrs), that Montgomery changed her story and implicated petitioner. So over five years after the shooting, petitioner was indicted and tried.

Alisa Montgomery was the State's first witness at the trial. She said petitioner did the shooting. On cross-examination, in an effort to impeach Montgomery, co-counsel Joyner asked her about a picture she sent petitioner while he was at the detention center. The picture had written on the back "Hello Daddy.[] I miss you so much. I love you." After Montgomery said she did not know what she wrote on the back, co-counsel ask her to read it. She did not read it and said she now remembers. Co-counsel then moved the picture into evidence.

At the post-conviction relief hearing, petitioner testified that he was told that if he did not testify he would get the last argument. He did not testify and he fully expected to get the last argument. His attorney, however, did not get the final closing argument.

Co-counsel Joyner admitted that it is preferable not to lose final closing argument when no witnesses are put up, but she put the picture into evidence. She also admitted that she got her point across about the picture before she put it into evidence.

Co-counsel Godfrey testified that having final closing argument when no evidence is put up is a significant advantage. He said that was the plan until co-counsel Joyner put the photograph in evidence and killed final closing argument. He agreed that the prior testimony that the impeachment value of the photograph had already been gleaned before it was put into evidence. If she had not offered the photo into evidence, they would have had final closing argument.

4

        Godfrey also noted that the State did not have any physical evidence against petitioner.

. . . Instead of responding to the State's closing argument, which would have been much more effective, petitioner had to anticipate what the state would argue since he did not have final closing argument.

    . . . .

        In this case at bar, co-counsel Joyner admitted that she got her point across before she offered the picture into evidence. BOTH attorneys admitted the importance of having final closing argument. This was not a case of overwhelming evidence against petitioner. Co-counsel Godfrey testified there was no physical evidence against petitioner. The jury needed an Allen charge because they could not reach a unanimous verdict. The error is not having final closing argument undermined confidence in the outcome of the trial.

        The Petitioner further argue that not only was the courts rulings was un[r]easonably and contrary to federal law(s). This issue also had a substantial and injurious effect and influence in determining the jury's verdict, which leaves this . . . court in grave doubt, and petitioner's conviction cannot stand.

**Ground Two**: The P.C.R. court erred in finding that trial counsel was not ineffective for not objecting to the "Allen" charge

*Supporting Facts:* Trial counsel was ineffective p[e]r 6th Amendment U.S. Constitution, Strickland v. Washington 104 sct. 2052(1984) and petitioner denied Due Process of Law p[e]r 14th Amendment U.S. Constitution. When trial counsel failed to object to an improper and coercive "Allen Charge". Stating "However, I tell you ladies and gentlemen, that a juror does not render good jury service who arbitrarily says I know what I want to do in this case and if and when everybody agrees with me, we'll write a verdict and we wont write a verdict until that time." This instruction was precisely held to be "unconstitutionally coercive" in Dawson v. State 572 se2d 445, 352 SC 15 (SC 2002). "Allen Charge was unconstitutionally coercive where trial judge confirmed existence of one hold out juror and then stated" I have sometimes thought that the juror who could render less service to the court and to country than any other juror is the jury who says, "I know what I want to do in this

5

case and when and if everybody agrees with me, then we'll write a verdict and will not write one until that time". This is the exact same instruction that was prohibited <u>Dawson v. State</u>, Supra. However, the trial court committed <u>further</u> Constitutional Error when the Allen Charge was directed specifically to the minority voters and not directed to the majority. "However, I tell you that if much the larger number of your panel are in favor of one particular verdict, then a dissent juror or jurors should consider whether his or her position is a reasonable one which makes no impression upon the minds of the majority. In other words, if a majority of you are for one particular form of verdict, then the minority ought to seriously ask himself, herself or themselves whether he, she or they can reasonably coubt the correction of the judgment of the majority -- in <u>Dawson v. State</u> 572 se2d. 445, 3525(c) 15(SC 2002). "Allen Charge cannot be directed to the minority voters on the jury panel but must instead be even handed, directing both the majority and minority to consider the other views." In this case the charge was directed to the minority to re-examiner their position in light of the majority views, but the majority was not asked to reconsider their views in light of the minority position. . . . [I]n this case, no mention was made the majority was to give deference to the minority. Likewise, at 2:34 p.m. the jury was informed. "In conclusion, ladies and gentlemen, I tell you that if th[e] State is entitled to a verdict of guilty on these cases, then it is entitled to that verdict <u>Today, Not Tomorrow, New Week, Next Month, but Today.</u>" On the other hand, if this defendant is entitled to a verdict of not guilty on these charges, then he is entitled to that verdict <u>Today, Not Tomorrow, Next Week, Next Month but Today</u>. This placed a impermissible time constraint deadline on the jury that was <u>coercive</u> and improper, in an of itself, especially since a reasonable juror could believe the courthouse would close at 5 p.m. (As State offices/ City offices close at 5 p.m.) . . . In this case the court essentially import that the jury had two (2) hours and twenty (20) minutes to reach a verdict <u>TODAY</u>, (As a reasonable juror could have meant this to be 5 p.m. - normal closing time of courthouse). Finally, the court offered no instruction that "no juror should surrender his or her conviction simply to reach a unanimous verdict or

|  |  |
|---|---|
|  | that a juror need not give up conscientiously held belief. . . . Trial counsel failed to object to a Allen Charge" that taken as a whole was constitutionally impermissible and unduly coercive and this error of law denied the petitioner his due process right to a fair trial. . . . In his <u>Allen</u> charge, the trial judge used the exact wording with language directed specifically to minority jurors that had been found to be unduly coercive in Dawson v. State, 352 S.C. 15, 572 S.E.2d 445 (2002). The trial attorneys' failed to object to the proscribed language and then failed to poll the jury. As jury deliberations are behind closed doors it creates an onerous burden of proof to show a juror's thought process prior to an <u>Allen</u> charge that containing language found by case law to be coercive. Thus, the failure to object to the charge was unreasonable under prevailing norms of professional conduct and likely affected the outcome of [Petitioner's] trial. Trial counsel should have objected to this jury instruction and the failure to do so prejudiced the petitioner ability to receive a fair trial. |
| **Ground Three**: | The P.C.R. court erred in finding that trial counsel was not ineffective in the hand[l]ing of Tyrone Thomas petitioner's key witness |
| *Supporting Facts*: | The Petitioner contend that Mr. Godfrey, one of Petitioner's tr[ia]l atty.'s testified that the content of the tape was a statement by Tyrone Thompson, (who is now deceased), made in Mr. Godfrey's presence that the Petitioner had not fired the shots in question. It is likely that had trial counsel subpoenaed Tyrone Thompson such that there was a means to assure his testimony at trial, the outcome of the trial would have been different. Attorneys Godfrey and Joyner testified that witness, Tyrone Thompson, was a cooperating eye-witness who, based on their conversations [with] him, would present testimony that the Applicant did not commit the crimes. Mr. Godfrey showed a tape and testified that the content was a statement by Tyrone Thompson, made in Mr. Godfrey's presence, that the Applicant had not fired the shots in question. Tyrone Thompson and Alisha Montgomery were the only witnesses who could possibly i[]dentify the Petitioner as the shooter. After originally exculpating the Petitioner, |

7

|  |  |
|---|---|
|  | Ms. Montgomery changed her story 5 ½ years later. This left Tyrone Thompson as an integral defense witness who should have been subpoenaed. Even if there had been some difficulty locating the witness to subpoena ahead of time, under prevailing norms of professional conduct a subpoena should have at least been prepared and handed to the witness the day of trial to add strength to his testimony and given the Court control over the witness. Furthermore, given the testimony of both trial attorneys as to the content of Tyrone Thompson's statements, it is not "pure speculation" what the testimony would have been as stated on page eight (8) of the Order of Dismissal. Prejudice was demonstrated by the jurors having a question about where the missing witness (Tyrone Thompson) was and then being hung up prior to an arguable coercive <u>Allen</u> charge. The fact that this case was not pursued for years and the State dismissed the indictments against [Petitioner] prior to witness Alisha Montgomery changing her story shows that this was not a case of overwhelming evidence of guilt rather one hanging on the testimony of one witness. The hung jury shows that they were not overwhelming by the evidence presented by State's case.<br><br>  Also there was very credible testimony at the P.C.R. hearing from Ms. Mary Towns, (Petitioner's mother), who witness Tyrone Thomas being threatened by someone of the State, not to testify on Petitioner's behalf. |
| **Ground Four**: | The P.C.R. court erred in finding that Appellate counsel was not ineffective for not briefing the speedy trial issue |
| *Supporting Facts*: | Petitioner testified at his P.C.R. hearing that Shirekea Rivers (who was deceased by the time [of] Petitioner's trial) would have testified to the fact that Kiate Williams had tried to stab him with a knife.<br><br>  Which at Petitioner[']s trial Ms. Williams testified that she was an[] employee at the restaurant, and alleged that Petitioner had called shortly after the shooting and wanted to know was anybody hit and when the cook would get off work.<br><br>  Petitioner further claimed there was another missing witness, Rico Vaughn. |

As the Petitioner argued "every U.S. citizen should be allowed a speedy trial." The Petitioner alleged ineffective assistance of appellate counsel.

Trial attorney Godfrey moved to dismiss the indictments based on delay of prosecution. The trial judge denied the motion without considering on the record the
(1) length of delay
(2) reason for delay
(3) the Defendant's assertion of the right, and
(4) prejudice to the Defendant.
Petitioner's appeal counsel filed an <u>Anders</u> brief on the speedy trial issue. On page 11 of the State's order of dismissal, it was argued that the reasoning regarding the <u>Anders</u> brief makes it nearly impossible to show ineffective assistance of petitioner's counsel at the post-conviction level. When an appeal is perfected with an <u>Anders</u> procedure. This argument does not reflect the law regarding ineffective assistance of appellate defense which odes not guarantee effectiveness by the filing of an <u>Anders</u> brief.

Which the State Courts denial to <u>Strickland</u>; <u>Barber</u> and <u>Evitts v. Lucey</u> 105 SCt. 830 was objectively unreasonable and contrary to Fed. laws as stated but not limited to. . . .

The Petitioner further argue that ground 2, 3 and 4 above <u>is not</u> barred for "any" failure(s) to exhaust his remedies per. the State Supreme Court.

Where the State Supreme Court had the opportunity to pass upon and correct Petitioner's alleged violations of his claims. Where petitioner did everything in his power to raise his issues in his pro-se brief which petitioner re-argue each issue[.] Thus, the "state"-Supreme Court has expressly waived any argument upon exhaustion requirement(s).

Moreover, Petitioner further argue that if this court does deem that Petitioner has not exhausted his State Supreme Court remedy. And, that the State has not expressly waived the exhaustion requirement, an exception "<u>must</u>" be made where Petitioner has NO other rem[e]dies or opportunity(ies) to redress his grounds in any other State Court. Or where the corrective process is so clearly deficient in this matter that Petitioner, as to render futile any effort to obtain relief.

          Further, Petitioner argue that if this court does not fully review the constitutional claims in 2, 3, and 4 it will result in a fundamental miscarriage of justice.

**Ground Five**: Violation of the 1st and 14th Amend. per. Fed/U.S. and S.C. Const.

*Supporting Facts*: Here, the Petitioner argue that the State Supreme Court itself denied him the right to EXHAUST his State court "HIGHEST" remedy by not dismissing appellate counsel, Robert M. Pachak from his P.C.R. appeal - for petitioner to move pro-se. Where petitioner had a const. right to do so.

          Moreover, petitioner argue that he had a const. right to submit "ALL" his grounds to the Supreme Court, that was raised in his P.C.R. and or 59(e) motion, since appellate counsel Pachak refuse to raise "all" petitioner's grounds to the State Supreme Court for petitioner's later Fed. review.

          And in <u>Bell vs Cone</u> 543 U.S. 447, but not limited to, the State Supreme Court was aw[]are that the burden was on petitioner to raise his Fed. claim in the highest State court.

          Thus, the petitioner further re-argue as he did in his ground(s) set out in his PCR <u>2011-CP-23-03963</u>

**Ground Six**: Ineffective assistance of P.C.R. "appellate" counsel

*Supporting Facts*: Here, Petitioner also argue that his appellate counsel, Robert M. Pachak denied petitioner the right to exhaust his grounds to the highest state court.

          Therefore, the petitioner further reargue as he did in his ground(s) set out in his P.C.R. <u>2011-CP-23-03963</u>.

**Ground Seven**: Ineffective Assistance of trial counsel

*Supporting Facts*: (1) Counsel, Bill Godfrey and Counsel Clarissa Joyner failed to inform Applicant that they had this tape testimony of Applicant's KEY witness "Tyrone Thomas"

(2) Further counsel prejudiced Applicant when trial counsels <u>did not</u> offer this tape / evidence into evidence at trial.

10

        (3) . . . Since there is no Const. right to appointed counsel for collateral review of a conviction. And, since there is no right to hybrid representation and to be represented by counsel in South Carolina. Thus, Applicant had no way of amending his [PCR] application to show the above issues / arguments. Or the After-Discovered Evidence that is listed in this application.

        (4) Moreover, P.C.R. counsel Ross misinformed Applicant that once Applicant is at the P.C.R. hearing its too late to make any amendments.

        (5) Here, counsel, Ross <u>did not</u> even try to submit the tape of "Tyrone Thomas" under S.C.R.C.P. Rule 15(b) or any other rules or laws applicable by Const., civil practice or P.C.R. procedure Act.

**Ground Eight**:    After-Discovered Evidence

*Supporting Facts*:    (1) The Applicant strongly contend that he <u>was not</u> aware that his KEY witness "Tyrone Thomas" had given a taped recorded statement <u>until</u> his P.C.R. counsel, Susannah Ross showed this tape to the court.

        (2) Thus, this tape has been discovered "At" Applicant's P.C.R., and since Applicant's trial. And, could not have been discovered by the use of due diligence. Because Tyrone Thomas himself <u>did not</u> know he was being taped by Mr. Godfrey. Mr. Thomas told Applicant he only gave a written statement to Applicant's Atty: Bill Yarbough and Bill Godfrey.
Applicant was only aware of one tape, the tape from the Little Cricket, as Applicant stated in his first P.C.R. and argued at his P.C.R. hearing[.] Which clearly shows that Applicant was unaware of this tape of his KEY witness "Tyrone Thomas"

        (3) The Applicant further contend that this evidence "The Tape" would probably change the result if a new trial was had. Here, Mr. Godfrey himself, one of Applicant' trial Attys testified that the content of the tape was a statement by Tyrone Thomas (who is now

11

deceased), made in Mr. Godfrey's presence that the Applicant <u>had not</u> fired the shot(s) in question.
Moreover, in trial even the jurors had a question about where was the missing witness "Tyrone Thomas"

(4) Also there was very credible testimony at the P.C.R. hearing from Ms. Mary Towns, (Applicant's mother) who witness Tyrone Thomas being "<u>threatened</u>" by someone of the State, not to testify on Applicant's behalf.

(5) And, Alisha Montgomery even changed her story <u>after</u> five and ½ years to testify for the State against Applicant, shows that this case <u>was not</u> a case of overwhelming evidence of guilt for the State to re-ind Applicant after 5½ years, hanging on the testimony of one witness "Alisha Montgomery" whom both, Tyrone Thomas and Alisha Montgomery was in the car when this alleged incident took place. Thus, this tape is <u>very</u> material to the issue of guilt or innocence, and <u>is not</u> inasmuch as impeaching.

**Ground Nine**: Violation of the 1st, 6th 8th and 14th Amend.

*Supporting Facts*: (1) The Applicant strongly argues the 8th Amend. "cruel and unusual punishment", along with the 1st, 6th and 14th Amend. per the U.S., S.C. and Fed. Const.(s) as stated in his above arguments and grounds. Here, since there is no tolling upon the After-discovered evidence one year statute of limitation – even while Applicant has other pending review.

. . . .

Applicant's denial of due process, should have acted as checks and balances in our judicial process "The P.C.R. Act" which is owed to every person seeking collateral review of a conviction.
Although, this case calls into question the integrity of Applicant's conviction and this P.C.R. Act which violated the constitutions, prohibition against cruel and unusual punishment as listed from the grounds in this application, result not only from ineffective assistance of trial counsels and the After-discovered Evidence corrupt motive... that requires a full and fair evidentiary hearing with respect to Applicant's Const. rights.

> . . . .
>
> The Petitioner further argues that BOTH State Courts erred in dismissing his P.C.R. for failing to comply with the one year statute of limitations and the successive previous, in light of the petitioner's facts as argued above. And, his written explanation to the Supreme Ct. Which the petitioner re-argue
>
> **Ground Ten**: Actual Innocence
>
> *Supporting Facts*: The Petitioner argue that he is actual innocence, <u>not</u> legal innocence based on the facts argued thus far. And it will const. a gross miscarriage of justice if this court does not full review this constitutional issue, as well as "all" issues petitioner has argued. And, further argue as he argued in his After-Discovered Evidence, how his key witness "Tyrone Thomas" (who is now deceased) was intimidated by someone from the State - not to testify upon Petitioner's behalf
>
> **Ground Eleven**: Violation of the 14th Amend. per. the Fed./U.S. and S.C. Const.
>
> *Supporting Facts*: The petitioner re-argue his argument set out under the <u>after</u>-discovered evidence as his due process ground / argument. Where the State unconstitutionally interfered with his due process right to establish he defense by intimidating his key witness "Tyrone Thomas" (who is now deceased) from testifying on petitioner's behalf[.] Here, in petitioner case the intimidation <u>was not</u> harmless, but substantial prejudiced the petitioner and petitioner case must be automatic overturned.
>
> Moreover, cause and prejudice based on "all" arguments related to a full and fair adjudication and preservations of petitioner's requested relief.

[Doc. 1 (emphasis in original) (citations omitted); Doc. 1-1 at 33–37, 81 (emphasis in original) (citations omitted).]

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

> (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

16

'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

Respondent's memoranda[3] in support of his motion for summary judgment address only Grounds One through Six; the memoranda make no mention of Grounds Seven through Eleven. [*See* Docs. 29, 36.] Petitioner points out in his response in opposition that Respondent "did not defend or argue against" Grounds Seven through Eleven. [Doc. 42 at 1.] Yet, Respondent again failed to address Grounds Seven through Eleven in his reply to Petitioner's response [*see* Doc. 46], which Petitioner points out in his sur-reply [Doc. 48 at 1]. Thus, the Court has received no argument whatsoever from Respondent concerning Grounds Seven through Eleven.[4]

---

[3] As stated, on October 31, 2012, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 28, 29.] Respondent filed an amended memorandum on November 27, 2012. [Doc. 36.] While the Court uses the amended memorandum as the statement of Respondent's arguments in support of summary judgment, the Court notes Respondent has failed to point out any differences between the original memorandum and the amended memorandum, and the Court has failed to discern any differences.

[4] The Court notes Respondent's initial failure to address Grounds Seven through Eleven is understandable, but Respondent's subsequent failure to address Grounds Seven through Eleven exhibits a serious lack of thoroughness or attention to Petitioner's filings or the Court's Order that Respondent file a reply. Petitioner outlines Grounds One through Six within the § 2254 form [Doc. 1 at 1–14; Doc. 20-1 at 1–14 (Docket Entry Number 20-1 is the copy of Petition delivered to Respondent, the Attorney General of South Carolina, and the General Counsel of the South Carolina Department of Corrections)] and mentions that Grounds Seven through Ten appear in his attached sheets—and provides page numbers—but does not mention Ground Eleven [Doc. 1 at 15; Doc. 20-1 at 15]. Grounds Seven through Eleven appear at various locations in the pages Petitioner submitted with his Petition. [Doc. 1-1 at 33–37, 81; Doc. 20-1 at 68–72, 116.] Although docketed as "State Court Documents," a review of Docket Entry Number 1-1 shows that, in addition to documents filed in his state court proceedings, the filing contains some of Petitioner's grounds for relief raised in this federal habeas petition. The Court notes it located Grounds Seven through Eleven by expending

17

The Court could resolve the deficiency in Respondent's briefing in a variety of ways, including considering the motion for summary judgment as directed to only Grounds One through Six. However, it is not in the best interests of the Court or the litigants to examine the Petition in a piecemeal fashion, particularly when Grounds Seven through Eleven appear to be closely related to Grounds One through Six. Therefore, in the interest of judicial economy, the Court should determine whether Petitioner is entitled to relief based on a single review of the entire Petition, considering arguments on all grounds presented by both parties. Accordingly, the Court recommends that the pending motion for summary judgment be denied with leave to refile, such that Respondent may submit a motion addressing the entire Petition, to which Petitioner may submit a response. Respondent's memorandum in support of his new motion should, at a minimum, contain Respondent's arguments concerning each and every ground raised in the Petition—i.e., not merely the grounds omitted from the pending motion for summary judgment.[5]

---

a reasonable effort to follow Petitioner's directions in the Petition—and through a complete review of the Petition.

Further, in response to Respondent's motion for summary judgment, Petitioner points out that Respondent failed to address Grounds Seven through Eleven. [Doc. 42 at 1.] The Court directed Respondent to file a reply. [Doc. 44.] However, Respondent again failed to address Grounds Seven through Eleven; in fact, Respondent's reply closely tracks his amended memorandum in support of his motion for summary judgment. [Doc. 46.] In his sur-reply, Petitioner again addressed Respondent's failure to address all of Petitioner's grounds for relief. [Doc. 48 at 1.] Therefore, while the Court comprehends why Respondent may have initially failed to address all of Petitioner's grounds for relief, the Court is troubled by Respondent's repeated failure to address the entire Petition, particularly in light of several prompts to do so. However, as explained below, it is in the interest of judicial economy to allow Respondent one more opportunity to address every ground for relief such that the Court may consider the entire Petition at one time.

[5] However, Respondent need not resubmit the attachments to the original return and memorandum.

18

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Respondent's motion for summary judgment [Doc. 28] be DENIED WITH LEAVE TO REFILE.[6]

IT IS SO RECOMMENDED.

*[Signature]*
United States Magistrate Judge

April 30, 2013
Greenville, South Carolina

---

[6] If the District Court adopts this Report and Recommendation, the Court also recommends Respondent be directed to file his new motion within thirty days of the date of the District Court's Order adopting this Report and Recommendation.

19