IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Anthony Jesus Johnson,               )    Case No. 8:12-cv-01536-GRA-JDA
                                     )
            Petitioner,              )
                                     )
      v.                             )    **REPORT AND RECOMMENDATION**
                                     )    **OF MAGISTRATE JUDGE**
Warden Leroy Cartledge,              )
                                     )
            Respondent.              )
_____    )

       This matter is before the Court on Respondent's second motion for summary

judgment.  [Doc. 69.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief

under 28 U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local

Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial

petitions for relief and submit findings and recommendations to the District Court.

       Petitioner filed this Petition for writ of habeas corpus on June 7, 2012.[1]  [Doc. 1.]

On October 31, 2012, Respondent filed a motion for summary judgment and a return and

memorandum.  [Docs. 28, 29.]  On November 1, 2012, the Court filed an Order pursuant

to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary

judgment procedure and of the possible consequences if he failed to adequately respond

to the motion.  [Doc. 30.]  On November 26, 2012, Petitioner filed a motion for extension

of time to respond to the motion for summary judgment [Doc. 32], and the Court granted

Petitioner's motion, extending the response deadline to January 9, 2013 [Doc. 33].  Also

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on June 7, 2012.  [Doc. 1-3 (envelope marked as received by prison mailroom on June 7, 2012).]

on November 27, 2012, Respondent filed an amended memorandum in support of his motion for summary judgment. [Doc. 36.] Accordingly, the Court issued a second *Roseboro* Order and set Petitioner's response deadline to January 9, 2013. [Doc. 37.] After receiving another extension of time [Doc. 40], Petitioner filed a response in opposition to Respondent's motion for summary judgment on February 15, 2013 [Doc. 42]. Subsequently, Respondent filed a reply [Doc. 46] and Petitioner filed a sur-reply [Doc. 48]. On April 30, 2013, this Court issued a Report and Recommendation, recommending that Respondent's motion for summary judgment be denied without prejudice to refile. [Doc. 49.] The District Court adopted this recommendation on May 29, 2013. [Doc. 54.] Petitioner filed an interlocutory appeal of the District Court's order to the Fourth Circuit [Doc. 57], which was dismissed by the Fourth Circuit on September 27, 2013 [Docs. 79, 89].[2] Respondent filed his second motion for summary judgment on June 28, 2013. [Doc. 69.] The Court issued a *Roseboro* order on July 1, 2013 [Doc. 71], and Petitioner responded on October 11, 2013. [Doc. 83.] Accordingly, the motion is now ripe for review.

Having carefully considered the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

---

[2] Therefore, Petitioner's initial argument in his response brief that this Court's consideration of Defendant's summary judgment motion would be premature because he has a pending appeal [Doc. 83 at 1] is without merit.

2

## BACKGROUND

Petitioner is presently confined at the McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Greenville County Clerk of Court. [Doc. 1 at 1.] In May 2004, Petitioner was indicted for murder and assault and battery with intent to kill ("ABWIK"). [App. 351–54.[3]] On November 8, 2004, represented by E.P. Godfrey ("Godfrey") and Clarissa Warren Joyner ("Joyner"), Petitioner proceeded to trial. [App. 1–233.] On November 9, 2004, the jury returned a verdict of guilty for each charge. [App. 227.] Petitioner was sentenced to life imprisonment for the murder charge and ten years for the ABWIK charge, to run consecutive to the life sentence. [App. 232.]

**Direct Appeal**

Petitioner timely filed a notice of appeal. On September 14, 2006, Joseph L. Savitz, III, of the South Carolina Commission on Indigent Defense filed an *Anders* brief[4] on Petitioner's behalf, as well as a petition to be relieved as counsel. [App. 234–43.] The brief raised the following issue:

> The trial judge committed reversible error by refusing to instruct the jury on the lesser-included offense of voluntary manslaughter.

[App. 237.] On January 11, 2008, the South Carolina Court of Appeals issued a per curiam opinion dismissing Petitioner's appeal and granting his appellate counsel's motion to be

---

[3]The Appendix can be found at Docket Entry Numbers 29-1 through 29-3.

[4]A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

3

relieved.  [Doc. 29-4; *see also* App. 244 (first page of order of dismissal).]  Remittitur was issued on January 29, 2008.  [Doc. 29-5.]

**PCR Proceedings**

>   ***First PCR Application***

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on July 2, 2008.  [App. 245–59.]  Petitioner raised the following grounds for relief, quoted substantially verbatim:

ISSUE ONE

Trial counsel was ineffective . . . [w]hen trial counsel failed to object to a improper and coercive "Allen Charge." . . .

ISSUE TWO

Trial counsel Bill Godfrey was ineffective and applicant prejudiced thereby when he <u>failed</u> to object to the petit jury pool as being racially unbalanced in the composition and failed to show a systematic exclusion in the underrepresentation of minorities in the jury panel in violation of 5, 6, 14 Amendment U.S. Constitution . . . and to object in procedure of drawing jurors. . . .

ISSUE THREE

Applicant asserts that trial counsel was ineffective when [counsel] failed to offer proof that solicitor's office substantially interfered with applicants due process right to present defense by intimidation of defense witness Tyrone Thomas. . . .

ISSUE FOUR

Trial counsel was ineffective when he conceded the introductions impeachment evidence during cross-examination of state star witness Alisa Montgomery constituted "presentation of testimony and evidence" to deny the defendant right to have last argument to the jury and he was prejudiced thereby. . . .

4

## ISSUE FIVE

The State withheld vital impeachment (Videotape) evidence pursuant to Brady v. Maryland and State v. Kennerly, 503 S.E.2d.; in that the videotape of a nearby store was in possession of the police, and thought to contain photo of the Waffle House shooter, however, this videotape was not disclosed to the defense.

Further, trial counsel was ineffective for failing to investigate and discover the existence of the store videotape that depicted (2) suspects in Waffle House shooting, especially as this videotape was listed within a Police Report.

. . . .

## ISSUE SIX

State failed to disclose favorable evidence under Rule 5 / Brady that Alicia Montgomery gave several different statements to police that directly impeached her Trial testimony that she witnessed applicant fire a shot at Waffle House. . . .

## ISSUE SEVEN

. . . Trial Counsel was grossly ineffective when he failed to require prosecution witnesses be sequestered and this allowed state witnesses to tailor their testimony to be consistent with each others testimony and added semblance of credibility when those witnesses were allowed to testify off each other.

## ISSUE EIGHT

State committed prosecutorial misconduct in complicity with defense counsel when both parties covered up fact applicant had made complaints against defense counsel, and received refund of his fee payment to counsel and asked counsel to be relieved when these facts should have been b[r]ought forth to trial judge as a Motion to Relieve Counsel and this trial counsel was active under a conflict of interest that effected adequacy of his representation.

In a behind scenes shenanig[a]n counsel and solicitor acted together to cover up these facts. It was elementary that $10,000.00 fee paid by applicant was refunded (thru complaint

5

> to SC Bar Fee Resolution) and this adversely affected counsel
> representation and pretrial investigation and denied applicant
> effective assistance of counsel.
>
> <u>ISSUE NINE</u>
>
> Trial counsel was grossly ineffective when he failed to
> show that 2 minute ride to the Waffle House was <u>not</u> the
> Waffle House that the actual <u>other</u> Waffle House visited during
> the shooting (Laurens Road location). A videotape of Laurens
> Road location would have shown a Direct Alibi to the offense,
> however counsel due to fee dispute failed to investigate this
> avenue of defense and affected adequacy of his
> representation and constituted ineffective assistance of
> counsel.

[App. 252–59 (emphasis in original) (citations omitted).]

A hearing was held on the PCR application on February 23, 2010, where Petitioner

was represented by Susannah Ross ("Ross"). [App. 266–329.] Testimony was received

from Petitioner; Mary Lois Towns, Petitioner's mother; Joyner; and Godfrey. [*Id.*] On April

6, 2010, the PCR court filed an order denying and dismissing the application with prejudice.

[App. 330–41.] Subsequently, Ross filed on Petitioner's behalf a motion to alter or amend

the judgment pursuant to South Carolina Rule of Civil Procedure 59(e). [App. 342–45.]

On June 1, 2010, the PCR court filed an order denying and dismissing Petitioner's motion

to alter or amend the judgment. [App. 349–50.]

A notice of appeal was timely filed and served. On November 29, 2010, Robert A.

Pachak ("Pachak") of the South Carolina Commission on Indigent Defense filed a petition

for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, seeking

review of the PCR court's decision and raising the following issue:

> Whether co-counsel Joyner was ineffective in
> introducing into evidence a photograph during her cross-

examination of Alisa Montgomery because it deprived
petitioner of the last closing argument?

[Doc. 29-6 at 3.]  Subsequently, Petitioner sought leave to proceed pro se; leave to file a

pro se brief; to file a pro se motion pursuant to South Carolina Rule of Civil Procedure

60(b) with the PCR court; and to dismiss his appellate PCR counsel.  [Doc. 29-7.]  On

March 3, 2011, the South Carolina Supreme Court denied Petitioner's motion to relieve

counsel and proceed pro se, and the court indicated that, in light of its denial of Petitioner's

motion to proceed pro se, the court would not take any action on Petitioner's other pro se

filings.    [Doc. 29-8.]    The court also denied Petitioner's subsequent motion for

reconsideration.  [Doc. 29-11.]  On December 15, 2011, the South Carolina Supreme Court

denied the petition for writ of certiorari.  [Doc. 29-10.]  Remittitur was issued on January 4,

2012.  [Doc. 29-12.]

### Second PCR Application

Petitioner filed a second pro se PCR application on January 25, 2011.  [Doc. 29-13.]

Petitioner raised the following grounds for relief: ineffective assistance of trial counsel,

after-discovered evidence, and violation of the First, Sixth, Eighth, and Fourteenth

Amendments.  [*Id.* at 3; *see id.* at 4–6 (stating arguments supporting his grounds for

relief).]  The State moved to dismiss the application, arguing Petitioner's second PCR

application was successive to his first application and was untimely.  [Doc. 29-14.]  On May

2, 2011, the PCR court filed a conditional order of dismissal, finding the application should

be dismissed as successive and untimely unless Petitioner demonstrated specific reasons

why the application should not be dismissed.   [Doc. 29-15.]  Petitioner submitted a

response to the PCR court's conditional order [Doc. 29-17], but on July 14, 2011, the PCR

7

court filed a final order of dismissal, finding Petitioner had failed to show a sufficient reason why his application should not be dismissed [Doc. 29-18].[5]

Petitioner filed a notice of appeal and a statement pursuant to South Carolina Appellate Court Rule 243(c) as to why the lower court rulings were improper. [Doc. 29-22.] The South Carolina Supreme Court dismissed his appeal on December 15, 2011, finding Petitioner "failed to show that there is an arguable basis for asserting that the determination by the lower court was improper." [Doc. 29-23.] Remittitur was issued on January 4, 2012. [Doc. 29-24.]

### Third PCR Application

Petitioner filed a third pro se PCR application on June 14, 2011. [Doc. 29-25.] Petitioner raised the following grounds for relief: violation of the First and Fourteenth Amendments of the United States and South Carolina Constitutions and ineffective assistance of PCR appellate counsel. [*Id.* at 3.] Specifically, Petitioner argued the South Carolina Supreme Court and Pachak, the attorney who represented Petitioner during the appeal of his first PCR application, denied Petitioner the ability to exhaust his state court remedies as to all claims raised in his first PCR application for purposes of federal habeas review. [*Id.* at 8–10.] The State moved to dismiss the application, arguing Petitioner's third PCR application was successive to his prior applications and was untimely. [Doc. 29-26.] On September 15, 2011, the PCR court filed a conditional order of dismissal, finding the application should be dismissed as successive and untimely unless Petitioner

---

[5]The record also reveals that Petitioner filed a motion for rehearing pursuant to South Carolina Rule of Civil Procedure 59(e) [Doc. 29-20], to which the State filed a return [Doc. 29-21]. However, the record does not contain any decision on Petitioner's motion.

demonstrated specific reasons why the application should not be dismissed. [Doc. 29-27.]

Petitioner submitted a response to the PCR court's conditional order [Doc. 29-29], but on

December 8, 2011, the PCR court filed a final order of dismissal, finding Petitioner had

failed to show a sufficient reason why his application should not be dismissed [Doc. 29-30].

Petitioner filed a motion to alter or amend the judgment [Doc. 29-31], which was denied

[Doc. 29-33].

Petitioner filed a notice of appeal and a statement pursuant to South Carolina

Appellate Court Rule 243(c) as to why the lower court rulings were improper. [Doc. 29-34.]

The South Carolina Supreme Court dismissed his appeal on March 5, 2012, finding

Petitioner "failed to show that there is an arguable basis for asserting that the

determination by the lower court was improper." [Doc. 29-35.] Remittitur was issued on

March 21, 2012. [Doc. 29-36.]

**Petition for Writ of Habeas Corpus**

As stated, Petitioner filed this Petition for writ of habeas corpus on June 7, 2012

pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner asserts the following grounds for relief,

quoted substantially verbatim:

> **Ground One**:        Ineffective Assistance of trial counsel.
>
> *Supporting Facts:*    Petitioner argues that the State Courts denial of his claim(s) of ineffective assistance of counsel was contrary to Federal law(s). Where Petitioner further argue that both the P.C.R. court as well as the Supreme Court improperly applied the Strickland reasonable probability of the PREJUDICE standard, objectively unreasonable.
>              Here the courts identified the correct legal rule. But unreasonably applied them to the FACTS of Petitioner's case.

Where co-counsel Joyner was ineffective in introducing into evidence a photograph during her cross-examination of Alisa Montgomery because it deprived petitioner of the last closing argument. . . .

The police had little to go on. Both Tyrone Thompson and Alisa Montgomery had said petitioner <u>was not</u> involved.

It was "not" <u>until</u> several years later, (5 ½ yrs), that Montgomery changed her story and implicated petitioner. So over five years after the shooting, petitioner was indicted and tried.

Alisa Montgomery was the State's first witness at the trial. She said petitioner did the shooting. On cross-examination, in an effort to impeach Montgomery, co-counsel Joyner asked her about a picture she sent petitioner while he was at the detention center. The picture had written on the back "Hello Daddy.[] I miss you so much. I love you." After Montgomery said she did not know what she wrote on the back, co-counsel ask her to read it. She did not read it and said she now remembers. Co-counsel then moved the picture into evidence.

At the post-conviction relief hearing, petitioner testified that he was told that if he did not testify he would get the last argument. He did not testify and he fully expected to get the last argument. His attorney, however, did not get the final closing argument.

Co-counsel Joyner admitted that it is preferable not to lose final closing argument when no witnesses are put up, but she put the picture into evidence. She also admitted that she got her point across about the picture before she put it into evidence.

Co-counsel Godfrey testified that having final closing argument when no evidence is put up is a significant advantage. He said that was the plan until co-counsel Joyner put the photograph in evidence and killed final closing argument. He agreed that the prior testimony that the impeachment value of the photograph had already been gleaned before it was put into evidence. If she had not offered the photo into evidence, they would have had final closing argument.

Godfrey also noted that the State did not have any physical evidence against petitioner.

10

. . . Instead of responding to the State's closing argument, which would have been much more effective, petitioner had to anticipate what the state would argue since he did not have final closing argument.

. . . .

In this case at bar, co-counsel Joyner admitted that she got her point across before she offered the picture into evidence. BOTH attorneys admitted the importance of having final closing argument. This was not a case of overwhelming evidence against petitioner. Co-counsel Godfrey testified there was no physical evidence against petitioner. The jury needed an Allen charge because they could not reach a unanimous verdict. The error is not having final closing argument undermined confidence in the outcome of the trial.

The Petitioner further argue that not only was the courts rulings was un[r]easonably and contrary to federal law(s). This issue also had a substantial and injurious effect and influence in determining the jury's verdict, which leaves this . . . court in grave doubt, and petitioner's conviction cannot stand.

**Ground Two**:     The P.C.R. court erred in finding that trial counsel was not ineffective for not objecting to the "Allen" charge

*Supporting Facts:*     Trial counsel was ineffective p[e]r 6th Amendment U.S. Constitution, <u>Strickland v. Washington</u> 104 sct. 2052(1984) and petitioner denied Due Process of Law p[e]r 14th Amendment U.S. Constitution. When trial counsel failed to object to an improper and coercive "Allen Charge". Stating "However, I tell you ladies and gentlemen, that a juror does not render good jury service who arbitrarily says I know what I want to do in this case and if and when everybody agrees with me, we'll write a verdict and we wont write a verdict until that time." This instruction was precisely held to be "unconstitutionally coercive" in <u>Dawson v. State</u> 572 se2d 445, 352 SC 15 (SC 2002). "Allen Charge was unconstitutionally coercive where trial judge confirmed existence of one hold out juror and then stated" I have sometimes thought that the juror who could render less service to the court and to country than any other juror is the jury who says, "<u>I know what I want to do in this case and when and if everybody agrees with me, then we'll write a verdict and will not write one until that time</u>".

11

This is the exact same instruction that was prohibited <u>Dawson v. State</u>, Supra. However, the trial court committed <u>further</u> Constitutional Error when the Allen Charge was directed specifically to the minority voters and not directed to the majority. "However, I tell you that if much the larger number of your panel are in favor of one particular verdict, then a dissent juror or jurors should consider whether his or her position is a reasonable one which makes no impression upon the minds of the majority. In other words, if a majority of you are for one particular form of verdict, then the minority ought to seriously ask himself, herself or themselves whether he, she or they can reasonably coubt the correction of the judgment of the majority -- in <u>Dawson v. State</u> 572 se2d. 445, 3525(c) 15(SC 2002). "Allen Charge cannot be directed to the minority voters on the jury panel but must instead be even handed, directing both the majority and minority to consider the other views." In this case the charge was directed to the minority to re-examiner their position in light of the majority views, but the majority was not asked to reconsider their views in light of the minority position. . . . [I]n this case, not mention was made the majority was to give deference to the minority. Likewise, at 2:34 p.m. the jury was informed. "In conclusion, ladies and gentlemen, I tell you that if th[e] State is entitled to a verdict of guilty on these cases, then it is entitled to that verdict <u>Today, Not Tomorrow, New Week, Next Month, but Today."</u> On the other hand, if this defendant is entitled to a verdict of not guilty on these charges, then he is entitled to that verdict <u>Today, Not Tomorrow, Next Week, Next Month but Today</u>. This placed a impermissible time constraint deadline on the jury that was <u>coercive</u> and improper, in an of itself, especially since a reasonable juror could believe the courthouse would close at 5 p.m. (As State offices/ City offices close at 5 p.m.) . . . In this case the court essentially import that the jury had two (2) hours and twenty (20) minutes to reach a verdict <u>TODAY</u>, (As a reasonable juror could have meant this to be 5 p.m. - normal closing time of courthouse). Finally, the court offered no instruction that "no juror should surrender his or her conviction simply to reach a unanimous verdict or that a juror need not give up conscientiously held belief. . . . Trial counsel failed to object to a Allen

Charge" that taken as a whole was constitutionally impermissible and unduly coercive and this error of law denied the petitioner his due process right to a fair trial. . . . In his <u>Allen</u> charge, the trial judge used the exact wording with language directed specifically to minority jurors that had been found to be unduly coercive in Dawson v. State, 352 S.C. 15, 572 S.E.2d 445 (2002). The trial attorneys' failed to object to the proscribed language and then failed to poll the jury. As jury deliberations are behind closed doors it creates an onerous burden of proof to show a juror's thought process prior to an <u>Allen</u> charge that containing language found by case law to be coercive. Thus, the failure to object to the charge was unreasonable under prevailing norms of professional conduct and likely affected the outcome of [Petitioner's] trial. Trial counsel should have objected to this jury instruction and the failure to do so prejudiced the petitioner ability to receive a fair trial.

**Ground Three**:    The P.C.R. court erred in finding that trial counsel was not ineffective in the hand[l]ing of Tyrone Thomas petitioner's key witness

*Supporting Facts*:    The Petitioner contend[s] that Mr. Godfrey, one of Petitioner's tr[ia]l atty.'s testified that the content of the tape was a statement by Tyrone Thompson, (who is now deceased), made in Mr. Godfrey's presence that the Petitioner had not fired the shots in question. It is likely that had trial counsel subpoenaed Tyrone Thompson such that there was a means to assure his testimony at trial, the outcome of the trial would have been different. Attorneys Godfrey and Joyner testified that witness, Tyrone Thompson, was a cooperating eye-witness who, based on their conversations [with] him, would present testimony that the Applicant did not commit the crimes. Mr. Godfrey showed a tape and testified that the content was a statement by Tyrone Thompson, made in Mr. Godfrey's presence, that the Applicant had not fired the shots in question. Tyrone Thompson and Alisha Montgomery were the only witnesses who could possibly i[]dentify the Petitioner as the shooter. After originally exculpating the Petitioner, Ms. Montgomery changed her story 5 ½ years later. This left Tyrone Thompson as an integral defense

13

witness who should have been subpoenaed. Even if there had been some difficulty locating the witness to subpoena ahead of time, under prevailing norms of professional conduct a subpoena should have at least been prepared and handed to the witness the day of trial to add strength to his testimony and given the Court control over the witness. Furthermore, given the testimony of both trial attorneys as to the content of Tyrone Thompson's statements, it is not "pure speculation" what the testimony would have been as stated on page eight (8) of the Order of Dismissal. Prejudice was demonstrated by the jurors having a question about where the missing witness (Tyrone Thompson) was and then being hung up prior to an arguable coercive <u>Allen</u> charge. The fact that this case was not pursued for years and the State dismissed the indictments against [Petitioner] prior to witness Alisha Montgomery changing her story shows that this was not a case of overwhelming evidence of guilt rather one hanging on the testimony of one witness. The hung jury shows that they were not overwhelming by the evidence presented by State's case.

Also there was very credible testimony at the P.C.R. hearing from Ms. Mary Towns, (Petitioner's mother), who witness Tyrone Thomas being threatened by someone of the State, not to testify on Petitioner's behalf.

**Ground Four**:    The P.C.R. court erred in finding that Appellate counsel was not ineffective for not briefing the speedy trial issue

*Supporting Facts*:    Petitioner testified at his P.C.R. hearing that Shirekea Rivers (who was deceased by the time [of] Petitioner's trial) would have testified to the fact that Kiate Williams had tried to stab him with a knife.

Which at Petitioner[']s trial Ms. Williams testified that she was an[] employee at the restaurant, and alleged that Petitioner had called shortly after the shooting and wanted to know was anybody hit and when the cook would get off work.

Petitioner further claimed there was another missing witness, Rico Vaughn.

As the Petitioner argued "every U.S. citizen should be allowed a speedy trial." The Petitioner alleged ineffective assistance of appellate counsel.

14

Trial attorney Godfrey moved to dismiss the indictments based on delay of prosecution.  The trial judge denied the motion without considering on the record the

(1) length of delay

(2) reason for delay

(3) the Defendant's assertion of the right, and

(4) prejudice to the Defendant.

Petitioner's appeal counsel filed an Anders brief on the speedy trial issue.  On page 11 of the State's order of dismissal, it was argued that the reasoning regarding the Anders brief makes it nearly impossible to show ineffective assistance of petitioner's counsel at the post-conviction level.  When an appeal is perfected with an Anders procedure.  This argument does not reflect the law regarding ineffective assistance of appellate defense which odes not guarantee effectiveness by the filing of an Anders brief.

Which the State Courts denial to Strickland; Barber and Evitts v. Lucey 105 SCt. 830 was objectively unreasonable and contrary to Fed. laws as stated but not limited to. . . .

The Petitioner further argue that ground 2, 3 and 4 above is not barred for "any" failure(s) to exhaust his remedies per. the State Supreme Court.

Where the State Supreme Court had the opportunity to pass upon and correct Petitioner's alleged violations of his claims.  Where petitioner did everything in his power to raise his issues in his pro-se brief which petitioner re-argue each issue[.]  Thus, the "state"-Supreme Court has expressly waived any argument upon exhaustion requirement(s).

Moreover, Petitioner further argue that if this court does deem that Petitioner has not exhausted his State Supreme Court remedy.  And, that the State has not expressly waived the exhaustion requirement, an exception "must" be made where Petitioner has NO other rem[e]dies or opportunity(ies) to redress his grounds in any other State Court.  Or where the corrective process is so clearly deficient in this matter that Petitioner, as to render futile any effort to obtain relief.

Further, Petitioner argue that if this court does not fully review the constitutional claims in 2, 3, and 4 it will result in a fundamental miscarriage of justice.

**Ground Five**:    Violation of the 1st and 14th Amend. per. Fed/U.S. and S.C. Const.

*Supporting Facts*:    Here, the Petitioner argue that the State Supreme Court itself denied him the right to EXHAUST his State court "HIGHEST" remedy by not dismissing appellate counsel, Robert M. Pachak from his P.C.R. appeal - for petitioner to move pro-se.   Where petitioner had a const. right to do so.

Moreover, petitioner argue that he had a const. right to submit "ALL" his grounds to the Supreme Court, that was raised in his P.C.R. and or 59(e) motion, since appellate counsel Pachak refuse to raise "all" petitioner's grounds to the State Supreme Court for petitioner's later Fed. review.

And in <u>Bell vs Cone</u> 543 U.S. 447, but not limited to, the State Supreme Court was aw[]are that the burden was on petitioner to raise his Fed. claim in the highest State court.

Thus, the petitioner further re-argue as he did in his ground(s) set out in his PCR <u>2011-CP-23-03963</u>

**Ground Six**:    Ineffective assistance of P.C.R. "appellate" counsel

*Supporting Facts*:    Here, Petitioner also argue that his appellate counsel, Robert M. Pachak denied petitioner the right to exhaust his grounds to the highest state court.

Therefore, the petitioner further reargue as he did in his ground(s) set out in his P.C.R. <u>2011-CP-23-03963</u>.

**Ground Seven**:    Ineffective Assistance of trial counsel

*Supporting Facts*:    (1) Counsel, Bill Godfrey and Counsel Clarissa Joyner failed to inform Applicant that they had this tape testimony of Applicant's KEY witness "Tyrone Thomas"

(2) Further counsel prejudiced Applicant when trial counsels <u>did not</u> offer this tape / evidence into evidence at trial.

(3) . . . Since there is no Const. right to appointed counsel for collateral review of a conviction.  And, since there is no right to hybrid representation and to be

16

represented by counsel in South Carolina. Thus, Applicant had no way of amending his [PCR] application to show the above issues / arguments. Or the After-Discovered Evidence that is listed in this application.

(4) Moreover, P.C.R. counsel Ross misinformed Applicant that once Applicant is at the P.C.R. hearing its too late to make any amendments.

(5) Here, counsel, Ross <u>did not</u> even try to submit the tape of "Tyrone Thomas" under S.C.R.C.P. Rule 15(b) or any other rules or laws applicable by Const., civil practice or P.C.R. procedure Act.

**Ground Eight**:    After-Discovered Evidence

*Supporting Facts*:    (1) The Applicant strongly contend that he <u>was not</u> aware that his KEY witness "Tyrone Thomas" had given a taped recorded statement <u>until</u> his P.C.R. counsel, Susannah Ross showed this tape to the court.

(2) Thus, this tape has been discovered "At" Applicant's P.C.R., and since Applicant's trial. And, could not have been discovered by the use of due diligence. Because Tyrone Thomas himself <u>did not</u> know he was being taped by Mr. Godfrey. Mr. Thomas told Applicant he only gave a written statement to Applicant's Atty: Bill Yarbough and Bill Godfrey.
Applicant was only aware of one tape, the tape from the Little Cricket, as Applicant stated in his first P.C.R. and argued at his P.C.R. hearing[.]  Which clearly shows that Applicant was unaware of this tape of his KEY witness "Tyrone Thomas"

(3) The Applicant further contend that this evidence "The Tape" would probably change the result if a new trial was had.  Here, Mr. Godfrey himself, one of Applicant' trial Attys testified that the content of the tape was a statement by Tyrone Thomas (who is now deceased), made in Mr. Godfrey's presence that the Applicant <u>had not</u> fired the shot(s) in question.
Moreover, in trial even the jurors had a question about where was the missing witness "Tyrone Thomas"

17

(4) Also there was very credible testimony at the P.C.R. hearing from Ms. Mary Towns, (Applicant's mother) who witness Tyrone Thomas being "<u>threatened</u>" by someone of the State, not to testify on Applicant's behalf.

(5) And, Alisha Montgomery even changed her story <u>after</u> five and ½ years to testify for the State against Applicant, shows that this case <u>was not</u> a case of overwhelming evidence of guilt for the State to re-ind Applicant after 5½ years, hanging on the testimony of one witness "Alisha Montgomery" whom both, Tyrone Thomas and Alisha Montgomery was in the car when this alleged incident took place. Thus, this tape is <u>very</u> material to the issue of guilt or innocence, and <u>is not</u> inasmuch as impeaching.

**Ground Nine**:        Violation of the 1st, 6th 8th and 14th Amend.

*Supporting Facts*:   (1) The Applicant strongly argues the 8th Amend. "cruel and unusual punishment", along with the 1st, 6th and 14th Amend. per the U.S., S.C. and Fed. Const.(s) as stated in his above arguments and grounds. Here, since there is no tolling upon the After-discovered evidence one year statute of limitation – even while Applicant has other pending review.

. . . .

Applicant's denial of due process, should have acted as checks and balances in our judicial process "The P.C.R. Act" which is owed to every person seeking collateral review of a conviction.
Although, this case calls into question the integrity of Applicant's conviction and this P.C.R. Act which violated the constitutions, prohibition against cruel and unusual punishment as listed from the grounds in this application, result not only from ineffective assistance of trial counsels and the After-discovered Evidence corrupt motive... that requires a full and fair evidentiary hearing with respect to Applicant's Const. rights.
. . . .

The Petitioner further argues that BOTH State Courts erred in dismissing his P.C.R. for failing to comply with the one year statute of limitations and the successive

previous, in light of the petitioner's facts as argued above. And, his written explanation to the Supreme Ct. Which the petitioner re-argue

**Ground Ten**:          Actual Innocence

*Supporting Facts*:      The Petitioner argue that he is actual innocence, <u>not</u> legal innocence based on the facts argued thus far. And it will const. a gross miscarriage of justice if this court does not full review this constitutional issue, as well as "all" issues petitioner has argued. And, further argue as he argued in his After-Discovered Evidence, how his key witness "Tyrone Thomas" (who is now deceased) was intimidated by someone from the State - not to testify upon Petitioner's behalf[6]

**Ground Eleven**:       Violation of the 14th Amend. per. the Fed./U.S. and S.C. Const.

*Supporting Facts*:      The petitioner re-argue his argument set out under the <u>after</u>-discovered evidence as his due process ground / argument. Where the State unconstitutionally interfered with his due process right to establish he defense by intimidating his key witness "Tyrone Thomas" (who is now deceased) from testifying on petitioner's behalf[.] Here, in petitioner case the intimidation <u>was not</u> harmless, but substantial prejudiced the petitioner and petitioner case must be automatic overturned.

Moreover, cause and prejudice based on "all" arguments related to a full and fair adjudication and preservations of petitioner's requested relief.

[Doc. 1 (emphasis in original) (citations omitted); Doc. 1-1 at 33–37, 81 (emphasis in original) (citations omitted).]

## **APPLICABLE LAW**

**Liberal Construction of Pro Se Petition**

---

[6]Although, as laid out below, the Court finds that Grounds 2-10 are procedurally barred, the Court has considered Plaintiff's claim of actual innocence in its analysis of whether the procedural bar should be waived.

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all

20

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and

"even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### Exhaustion

Section 2254 contains the requirement of exhausting state court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (i) there is an absence of available State corrective process; or

23

> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the

judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[7]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.[8]

---

[7]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[8]In *State v. McKennedy*, the South Carolina Supreme Court reiterated that a petition for discretionary review to the South Carolina Supreme Court in criminal and post-conviction cases is outside South Carolina's standard review process, and therefore, "petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies."  559 S.E.2d 850, 854 (S.C. 2002) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3) & 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and

> while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Sykes*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure or where a "fundamental miscarriage of justice" has occurred. *Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failing to raise the claim, the petitioner may show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*,

28

523 U.S. 614, 623 (1998).  To demonstrate this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

## DISCUSSION

**Procedural Bar**

Respondent concedes that Petitioner filed his Petition within the applicable statute of limitations. [Doc. 70 at 34.]  Respondent asserts, however, that Grounds Two through Eleven are procedurally barred.  The Court agrees.  As noted, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application.  The only issue Petitioner raised on his direct appeal was "whether the trial judge committed reversible error by refusing to instruct the jury on the lesser-included offense of voluntary manslaughter?"[9]  In Petitioner's appeal from the PCR court's order to the South Carolina Supreme Court, the only issue his counsel raised was "whether co-counsel Joyner was ineffective in introducing into evidence a photograph during her cross-examination of Alisa Montgomery because it deprived petitioner of the last closing argument?"  Therefore, in liberally construing his Petition, the Court will consider a claim for ineffective assistance of trial counsel for introducing the relevant photograph into evidence.  However, his other claims are barred because they were not raised to the highest South Carolina Court.

Petitioner argues that he has properly exhausted his claims and therefore they are not barred, but even if he did not exhaust, "an exception in Petitioner's case must be made,

---

[9] Petitioner does not raise this claim in his Petition.

29

where Petitioner has no other opportunity to obtain redress in any state court." [Doc. 83 at 3.] Moreover, he argues that "the corrective process in the state courts has been deficient as to render futile any efforts to obtain relief. ... Therefore, also any exhaustion requirement is technically satisfied. [*Id*. at 18.]   At other points in his response, Petitioner appears to concede that his claims are procedurally barred:

> Respondent further argued that Petitioner's Appellate Defense Counsel Mr. Robert M. Pachak raised only one issue to the S.C. Supreme Court, that issue is the same issue raised in GROUND ONE of his petition for habeas corpus.  Which the Petitioner agrees and verbatim reargue[s] his ground one in full.

[*Id.* at 4.] Liberally construing the arguments in Petitioner's response as to whether the procedural bar applies, the Court construes that Petitioner is asserting that his PCR appellate counsel was ineffective for failing to raise all his arguments on appeal to the Supreme Court, and not just one.[10]

As noted, on the appeal of his PCR claim, Petitioner was represented by counsel, who filed a merits brief on his behalf.  [Doc. 29-6 at 3.] Petitioner also filed his own PCR brief along with a motion to proceed pro se in his appeal, which the South Carolina Supreme Court denied.  [Doc. 29-8.]  The court also denied Petitioner's motion for reconsideration [Doc. 29-11] and subsequently denied the petition for writ of certiorari. [Doc. 29-10.]

In *Whelchel v. Bazzle*, the district court considered a similar scenario of a petitioner attempting to file pro se motions while represented by counsel, though at the PCR court trial level.  489 F.Supp.2d 523, 531 (D.S.C. 2006)  There, the petitioner filed several pro

_____

[10] Petitioner concedes in his response that he does not have a constitutional right to effective PCR appellate counsel. [Doc. 83 at 10.]

se motions to amend his PCR application.  *Id.*  The PCR court rejected the amendments because petitioner was represented by counsel in his PCR case, and the court found that such amendments violated the South Carolina state law against "hybrid representation." Id.  "It is well settled that a defendant does not have a Sixth Amendment right to 'hybrid' representation, meaning a defendant does not have a right to proceed partially pro se and partially with counsel."  *Id.* (citing *McKaskle v. Wiggins*, 465 U.S. 168,183 (1984)).  The South Carolina Constitution does not provide a right to hybrid representation, either.  *Id.* (citing *Foster v. State*, 379 S.E.2d 907, 907 (S.C. 1989)).  In *Whelchel*, Judge Duffy found that the PCR court properly rejected the petitioner's pro se claims as prohibited under the hybrid representation rule and thus determined that because the claims were never properly presented to the state courts, they were unexhausted and procedurally barred. *Id.*

The Court finds the same analysis appropriate here.  Petitioner was represented by counsel and had no right to proceed in a hybrid fashion with his PCR appeal.  Petitioner's counsel filed a merits brief, laying out one ground for appellate consideration, which the Supreme Court of South Carolina addressed.  The remaining grounds were not properly before the Supreme Court because of the prohibition against hybrid representation, and thus they are unexhausted and procedurally barred.  Therefore, to proceed on these claims, Petitioner must show cause and actual prejudice or a miscarriage of justice.

The Court has construed Petitioner's cause argument to be the fact that his PCR appellate counsel did not raise all of the applicable grounds on appeal to the Supreme Court–in essence, ineffective assistance of PCR appellate counsel.  As noted, cause must

be "external to the petitioner, something that cannot be fairly attributed to him." *Coleman*, 501 U.S. at 753. The Supreme Court recently held in *Martinez v. Ryan* that

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S.Ct. 1309, 1320 (2012). "Martinez offers no support, however, for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause." *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012). As the Eighth Circuit pointed out, *Martinez* is to be a "limited qualification" on the *Coleman* rule, which held that an attorney's negligence in a post-conviction proceeding does not establish cause. *Id.* The *Martinez* exception arises from the reality that initial review collateral proceedings are often the first proceeding in which a petitioner can raise a claim of ineffective assistance of counsel, in essence making the collateral proceeding the equivalent of a direct appeal on that issue. *Id.* (citing *Martinez*, 132 S.Ct. at 1320).

In *Arnold*, like here, the petitioner asserted an ineffective assistance claim not for his initial review collateral proceeding, but for his post-conviction appellate lawyer. *Id*. "Arnold's multiple ineffective assistance claims were litigated in his initial-review collateral proceeding, but not preserved on appeal. Thus, unlike Martinez, Arnold has already had his day in court, deprivation of a second day does not constitute cause." *Id*. Petitioner here does not contend that his initial PCR counsel was ineffective, or that all his claims were not raised in his initial PCR hearing. Instead, he argues that his appellate counsel was ineffective for only raising one ground to the South Carolina Supreme Court. As

explained in *Arnold*, such a claim is insufficient to support an argument for cause and prejudice.

In the alternative to cause and prejudice, Petitioner must show a miscarriage of justice, *i.e.* actual innocence, to overcome the procedural bar. Petitioner fails to make that showing here. To show actual innocence, Petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable jury would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998). At trial, Michael Adams, an employee at the Waffle House on Augusta Road in Greenville, South Carolina, where the shooting at issue occurred, testified that he had an altercation with Petitioner. [App. 44.] He identified Petitioner in a line up and picked him out in court. [*Id*.] Petitioner's ex-girlfriend, Alisa Montgomery, who was present on the night in question, testified that Petitioner had an altercation with Adams at the Waffle House. [App. 66.] After leaving the Waffle House, she testified that Petitioner pulled out a gun and shot through the Waffle House window. [App. 69.] Montgomery also testified that Petitioner received a call after the shooting from a friend warning Petitioner that the police were after him for the shooting. [App. 72.] After receiving the call, Petitioner and Montgomery fled to Atlanta. [*Id*.] After reviewing this evidence, the Court cannot conclude that a no reasonable juror would have convicted Petitioner. And though Petitioner makes self-serving statements about his actual innocence, the only evidence he presents on the issue are two affidavits from his mother and friend that they overheard the solicitor threatening another potential eye witness that they would put the witness in jail if he testified on Petitioner's behalf. [Docs. 83-2, 83-3.] Petitioner did not proffer to the PCR court or otherwise make an offering of proof as to what this eye witness' testimony would have been. Such conjecture cannot rise to the level of

proof of actual innocence. Therefore, Petitioner's Grounds Two through Eleven are procedurally barred.

**Merits of Remaining Claim**

In Ground One, Petitioner argues that his trial counsel was ineffective. He concedes that the PCR court applied the correct legal standard of *Strickland v. Washington* to his ineffective assistance of counsel claim, but claims that the court misapplied the standard to the facts of his case. Petitioner argues that his counsel was ineffective because she introduced into evidence a photograph intended to show the bias of one of the witnesses against him. As a result, because the defense introduced evidence, the prosecution was entitled to give the final closing argument, whereas if the defense offers no testimony or evidence, the defendant is entitled to the final closing argument. Petitioner claims he did not testify so as to preserve his right to the final argument.

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A

34

> state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts
> that are materially indistinguishable from a decision of this
> Court and nevertheless arrives at a result different from our
> precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of

Supreme Court precedent when the decision "correctly identifies the governing legal rule

but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see*

*also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what

arguments or theories supported or, as here, could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that

those arguments or theories are inconsistent with the holding in a prior decision of this

Court. . . . It bears repeating that even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to

or an unreasonable application of Supreme Court precedent unless applicable Supreme

Court precedent exists; without applicable Supreme Court precedent, there is no habeas

relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart*

*v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th

Cir.2006)); *see also Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of

counsel, assuming the state court applied the correct legal standard—the Supreme Court's

holdings in *Strickland*—"[t]he pivotal question is whether the state court's application of the

*Strickland* standard was unreasonable.  This is different from asking whether defense

counsel's performance fell below *Strickland*'s standard."[11] *Richter*, 131 S. Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

As Petitioner conceded, the PCR court applied the proper standard for ineffective assistance claims set forth in *Strickland*. In analyzing the case under *Strickland*, the court considered whether counsel was ineffective for introducing "impeachment evidence during cross-examination of State witness[, which] denied the defense the right to have the final closing argument to the jury. [App. 331.] At the PCR hearing, trial counsel testified that the

---

[11]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

defense did not have the final closing argument because during her cross-examination of Alisa Montgomery, the state's key eye witness, counsel "entered a photograph into evidence to show Montgomery was not afraid of the [Petitioner] and had corresponded with him in prison." [App. 335.]

The PCR court found that Petitioner failed to meet his burden of proving that his case was prejudiced because he did not have the final closing argument.

> Both Godfrey and Joyner testified they planned on having the last closing argument before the jury. Joyner admitted, however, that final argument was waived after she entered a defense exhibit into evidence during the cross-examination of Alisa Montgomery. This Court finds it is purely speculative that the defense having final closing argument would have affected the outcome of the trial. The State presented strong evidence of the [Petitioner's] guilt: (1) witnesses testified the [Petitioner] got into a heated argument with the cook at the restaurant and was escorted out, (2) the [Petitioner's] friend–an employee at the restaurant–testified that the [Petitioner] called shortly after the shooting and wanted to know "was anybody hit?" and when the cook would get off work, and (3) Alisa Montgomery testified she was in the car with the [Petitioner] and Tyrone Thomas when she saw the [Petitioner] shoot into the restaurant. (Trial transcript, pp. 62-78; pp. 103-16; pp. 121-27; pp. 132-34). Accordingly, the [Petitioner] failed to prove any resulting prejudice. *See Franklin v. Catoe*, 346 S.C. 563, 570 n. 3, 552 S.E.2d 718, 722 n. 3 (2001) (finding overwhelming evidence of guilt negated any claim that counsel's deficient performance could have reasonable affected the results of defendant's trial); *Geter v. State*, 305 S.C. 365, 367, 409 S.E.2d 344, 346 (1991) (concluding reasonable probability of a different result does not exist when there is overwhelming evidence of guilt).

[App. 338.] Moreover, the PCR court was not persuaded that the Petitioner would have testified on his own behalf because he was serving a twenty-five year sentence for trafficking cocaine at the time of the trial and the PCR court found "it doubtful that the [Petitioner] would have submitted to cross-examination by the State when there was such powerful impeachment evidence." [*Id.*] Finally, Petitioner was advised by the trial judge of his right to testify and Petitioner waived that right. [App. 337.]    In conclusion, the PCR

court found the Petitioner's testimony at the hearing to be not credible and counsel's testimony to be credible. [*Id.*] The court concluded that "trial counsel adequately conferred with the [Petitioner], conducted a proper investigation, and were thoroughly competent in their representation." [*Id.*]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. The Court finds that the PCR court adequately addressed the introduction of the photograph and waiver of final argument within the parameters of Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court heard testimony from both Petitioner and his trial counsel and found counsel's testimony to be credible, while finding Petitioner's testimony not credible. The PCR court found that trial counsel's strategic decisions introduction of evidence at trial to be reasonable and was not persuaded that the outcome of the trial would have been different had the defense had the final closing argument. [App. 338.] Therefore, the court concluded that the Petitioner failed to meet his burden of proof as to his allegations. The Petitioner failed to prove that counsel's performance fell below the standard of reasonable professional norms, and the Petitioner did not show prejudice as to the outcome. Having considered and applied the appropriate law, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends Respondent's motion

for summary judgment [Doc. 28] be granted.

IT IS SO RECOMMENDED.

*Jacquelyn D Austin*

JACQUELYN D AUSTIN
United States Magistrate Judge

January 6, 2013
Greenville, South Carolina